UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



BERNICE MALCOLM,

                                    Plaintiff,

                                              NOTICE OF MOTION
                                              Civ. No. 08-CV-6551(JWF)
                                              **Demands a jury trial.**

v.

**THE HONEOYE FALLS-LIMA EDUCATION
ASSOCIATION ("HFLEA"), NYSUT, ET AL.**

                              Defendants.

---

### PLEASE TAKE NOTICE:

Motion By:

                              Bernice Malcolm, *Pro Se* Plaintiff
                              6 Gingerwood Way
                              West Henrietta, New York 14586

Directed To:                  The Court and Defendants.

Date, Time and Place:         To be determined by the Court.

Relief Requested:             an Order granting plaintiff's motion for
                              renew/reconsideration, reinstatement, a stay,
                              alter/amend/vacate judgment, discovery, to take
                              depositions, leave to amend complaint, and trial by
                              jury

before this court on a date and time which will be provided by the court later.

Dated: April 10, 2015
Rochester, New York

                              Respectfully Submitted By:
                              *Bernice Malcolm*
                              Bernice Malcolm, *Pro se* Plaintiff

1

6 Gingerwood Way
West Henrietta, New York 14586

## SENT BY: U.S. OVERNIGHT EXPRESS MAIL

**New York State United Teachers Union**
Attorney for Defendants' HFLEA and NYSUT, ET AL.
Anthony J. Brock, Esq.,
Richard E. Casagrande, Esq.
800 Troy-Schenectady Road
Latham, New York 12110-2455

## CERTIFICATE OF SERVICE DATED APRIL 10, 2015

I, Bernice Malcolm, *pro se*, hereby certify that I filed and hand delivered the original and

a copy of the following Notice of Motion, Plaintiff Affidavit with annexed Exhibits and

Memorandum of Law with the Clerk of the **UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF NEW YORK**, located at 100 State Street, Rochester, New York,

14614 on April 10, 2015; and that I served two copies by U.S. Overnight Express Mail upon,

Defendants' counselors; Anthony J. Brock and Richard E. Casagrande, located at 800 Troy-

Schenectady Road, Latham, New York 12110-2455 on this day of April 10, 2015.

Bernice Malcolm, Pro *se* Plaintiff

### SENT BY: U.S. OVERNIGHT EXPRESS MAIL

**New York State United Teachers Union**
Attorney for Defendants' HFLEA and NYSUT, ET AL.
Anthony J. Brock, Esq.,
Richard E. Casagrande, Esq.
800 Troy-Schenectady Road
Latham, New York 12110-2455

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNICE MALCOLM,

Plaintiff,

**PLAINTIFF MALCOLM'S
AFFIDAVIT**

Civ. No. 08-CV-6551
**Plaintiff demands a jury trial.**

v.

**HONEOYE FALLS-LIMA EDUCATION HFLEA("HFLEA"), NYSUT, ET AL.**

Defendants.

**AFFIDAVIT OF BERNICE MALCOLM, *PRO SE* PLAINTIFF IN SUPPORT OF HER
MOTION FOR RENEW/RECONSIDERATION, REINSTATEMENT,A STAY,
ALTER/AMEND/VACATE JUDGMENT, AND CROSS MOTION FOR DISCOVERY,
TO TAKE DEPOSITIONS, LEAVE TO AMEND COMPLAINT, AND TRIAL BY JURY**

1.   I am Bernice Malcolm, an African American female, appears as the *Pro se*

Plaintiff and submit this affidavit in further support of my motion for renew/reconsideration,

reinstatement, a stay, alter/amend/vacate judgment, discovery, to take depositions, leave to

amend the complaint, and trial by jury.

2.   Plaintiff Malcolm submit this Affidavit based on personal and first-hand knowledge and

information surrounding the circumstances in the above-captioned matter.

3.   Plaintiff Malcolm re-alleges and incorporates her Complaint; Reply Affidavit with

annexed Exhibits, See, Dkt. # 91-2, Affidavit, See, Dkt #104 with annexed Exhibits,

Memorandum of Law; and any and all documents/exhibits in response to her opposition to

Defendants' motion for summary judgment, including Dkt. # # 1, 91, 103, 104.

4.   I was the <u>only</u> tenured female African American/Black teacher employed with the

1

Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA. I do not allege this statement. It is a true and accurate fact.

5. I worked for the Defendants, so I know that I was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA.

6. I properly served the NYSUT Defendants on or about February 18, 2009 by and through the United States Justice Department, United States Marshal Service. The United States Justice Department, United States Marshal executed and served the Summons and Complaint upon the NYSUT Defendants at its headquarters, located at 800 Troy-Schenectady Road, Latham, New York 12110-2455 on February 18, 2009. See, Dkt. # 4.

7. Docket Number 4 provides undisputed proof that the United States Department of Justice, United States Marshal executed service upon the New York State United Teachers ("NYSUT") at its Latham, New York headquarters. See, Dkt. # 4.

8. As attorney an authorized agent for the Defendants HFLEA and NYSUT, Attorney Anthony J. Brock accepted service on behalf of the New York State United Teachers ("NYSUT"); and signed for the Defendants' NYSUT as an agent authorized to accept service; and affirm that under penalty of perjury that he was an agent authorized to accept on behalf of NYSUT. See, Dkt. # 4.

9. During the 2001 through 2010 school years and thereafter, the Honeoye Falls-Lima Central School District granted paid administrative internships to white teachers and denied the same to Plaintiff Malcolm based on her race, color, age and gender, African American/Black

2

female.  Young, Carnevale-Bauer and Garvin was in full knowledge and supported the district's granting of paid administrative internships to its white employees.

10.  The credulity that the Court gives to the Defendants' words are misplaced and the Defendants are not worthy of it.

11. The Defendants knew of and supported the white teachers paid administrative internships within the District. The Defendants were all in full knowledge and aware that the School District granted paid administrative internships to its white members, as well as, paid tuition reimbursement.

12.  The Honeoye Falls Lima School District paid its white employees for tuition reimbursement beyond the Masters' degree level; and tuition reimbursement was outline in the parties' CBA and the Professional Development Plan,. See., Dkt. # 104, Exhibit 19.

13.  From 2001 through 2010, the Honeoye Falls-Lima Central School District granted paid administrative internships to Jeanine Lupisella, Richard Pound, Jeremy McBride, Lisa Mooseburger, Barbara Goldammer, Beth Eggler, Robert Clark, Denise Glaser, Jackie Davern, Antonio Vitale, but not limited to.

14.  I was promised a paid administrative internship by the District. I provided the HFLEA with documentation and the HFLEA/NYSUT had access to my personnel file. Further and most specifically, on January 26, 2006, Young heard Walling, my immediate supervisor tell me that Dr. Diane Reed, then Superintendent of Schools told them to grant me a paid administrative internship. Further and most specifically, I know for a fact that Young full well knew that the Union could have done something about it if they had wanted to because the Union full well knew that the District was granting paid administrative internship to white employees even during the 2006-2007 school years.

3

15. The District also promised Dennis Glaser, a white male and Robert Clark, a white male; a paid administrative internship. The HFLEA and NYSUT made certain that the district keep its promise to both Glaser and Clark.

16. I provided documentation to Young and he did not have to determine whether to file a valid grievance on my behalf because that was not in his authority to determine, process, evaluated and/or investigate. Young's duty was to forward the information to the grievance committee, but he did not based on my race, color and gender.

17. It was not in the authority of Young, Carnevale-Bauer and/or Garvin to determine whether I had a valid grievance and/or whether my grievances had merit. That was the Grievance Committee's job, but they all deviated from the CBA and HFLEA's Constitution. See, Dkt. # 104, Exhibit 8. Young, Carnevale-Bauer and Garvin made their own determination based on my race, color and gender; and discriminated against me.

18. Carnevale-Bauer's claim that I did not file a grievance while she was HFLEA President is disputed. Further and most specifically, it was not within the power and/or authority for Carnevale-Bauer to determine and/or interpret whether my complaints and the district responses justified submission to the next stage of the process. Carnevale-Bauer's job and duty was to forward my complaints to the grievance committee. See, Dkt. # 104, Exhibit 8; Dkt. # 104, ¶¶301, 302, 310.

19. The Court has mistaken. Even though I state that I did not believe that I could file a grievance on my own, I did in fact file grievances on my own with my immediate supervisor Kathy Walling and the district; and provided the HFLEA and NYSUT with voluminous documentation as evidenced in my Reply Affidavit and throughout the record before the Court.

20. I also provided the HFLEA/NYSUT with the counseling memorandums and gave them

4

permission to access my personnel file. Further and specifically, Carnevale-Bauer had copies of the counseling memorandums before I did. See, Pl. Aff., Dkt. # 104, ¶¶ 167 -175, 225, 227, 231, 236, 239, 240. The emails does not tell full story. The HFLEA/NYSUT was regularly making false claims that I refused to provide them with information and documentation. I provided them with what they requested, including the counseling memorandums; and access to my personnel file. See, Dkt. # 104, ¶306.

21. Garvin's statement that I refused to provide copies of the counseling memorandums is a lie. I did provide the counseling memorandums to the HFLEA/NYSUT. Further, the HFLEA/NYSUT has access to my personnel file, which contained copies of the counseling memorandums as well as documents that I did not know existed until April 2007, but the HFLEA/NYSUT knew they existed.

22. Further and most specifically, it was not in Garvin's authority to determine whether my claims/complaints as listed in the record; were grievances or not. He should not have taken then over. His duty was to forward them to the Grievance Committee. See Dkt. # 104, ¶ 310, Exhibit 8. Young, Carnevale-Bauer neither Garvin could determine, interpret, and/or decide whether a valid grievance was possible or had merit. Only the Grievance Committee could do that. See, Dkt. # 104, Exhibit 8.

23. Further Young, Carnevale-Bauer neither Garvin could determine whether I was absent without leave; and or that the district could suspend me and remove me from payroll. That was the duty of arbitration and a hearing. See, the CBA Dkt. # 91-2, ¶ 22, Exhibit D.

24. The Workers Compensation issues were subject to the parties' CBA and I was an active employee. See, Dkt. # 91-2, ¶ 22, Exhibit D.

25. I sustained a work-related injury in November 2005. The employees are covered under

5

the CBA under workers compensation.

26. The Defendants and School District left me in an feces infested bathroom for two weeks and they laughed and thought it to be funny. I became ill and had to seek medical attention.

27. Students were improperly placed in my classroom and there was evidence to support my claim, including my class rosters. See, Dkt. ## 104, Exhibits 13-17.

28. I was the Care Rep for the 2005-2006 school years. I informed the School District via email of my interest for the position for 2006-2007 school years. The Care Rep position was not a discretionary decision made by the School District and the HFLEA/NYSUT, as well as, Garvin had full knowledge of that. See, Dkt. # 91-2, Exhibit D.

29. I did not call my paraprofessional a spy. That was Garvin's terminology. I merely repeated to the HFLEA/NYSUT what Irwin told me. See, Dkt. 104, ¶¶ 244, 245, 246, 247, 248, 249. And Irwin told me that she confirmed to the HFLEA/NYSUT what she said to me and told them that she had to do what her bosses told her to do.

30. The HFLEA/NYSUT allowed the School District to remove me from payroll without a hearing as pursuant to the CBA and Education Law §3020-a and admits that it did so even though Michael Hagerman, then Interim Superintendent instructed Kevin Hamilton, then Director of Finance and Operations to do so from February 27, 2006 through March 2006. See, Dkt. # 104, Exhibit 19, which includes testimony from Hagerman, Walling and Hamilton.

31. I was an active employee. I did not run out of sick leave and neither did I take paid sick leave to circumvent an administrative internship. I had nineteen days left at the end of the 2005-2006 school years as evidenced on my payroll stubs. See, Dkt. # 104, Exhibit 39.

32. Both Young and Garvin were on the witness list for the School District in Education Law §3020-a. They were going to testify against me to favor the School District.

6

33. I worked for the Honeoye Falls-Lima Central School District from 2001 through 2008. I was regularly in attendance at district meetings; open houses; school events; district-wide workshops and conferences. I know for a fact that I was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA.

34. I also know for a fact that the School District admitted to the New York State Division of Human Rights ("NYSDHR") that I was the only tenured female African American/Black teacher or African American/Black teacher employed with the Honeoye Falls-Lima Central School District.

35. On September 14, 2008, the School District admitted to the New York State Division of Human Rights that the district was paying white employees for an administrative internship, including up to September 2007 even though they deceived many Courts and deceived and misrepresented otherwise. The School District continues to and has never stopped paying its white employees paid the tuition and for administrative internships for white teachers, including up to 2010 and present day; and the HFLEA/NYSUT is in full knowledge of that.

36. The letters that the Court's references in its decision from my Affidavit, Dkt. # 104, Exhibit 18 was to show the Court that the Defendants were in knowledge and knew that the School District's letter to SUNY Brockport that it was no longer paying tuition and granting paid administrative internships were lies and the Defendants knew they were lies. Young, Carnevale-Bauer and Garvin all knew that the School District was paying for its white employees' tuition and granting its white employees' paid administrative internships even when the District wrote and told SUNY Brockport that they were not. The letter does not contradict the information that I submitted. The letters are only proof of the HFLEA/NYSUT and School District's deceit and

7

misrepresentation. Further, the CBA and the district's professional development plan contradict Young's claims. See, CBA; Dkt. # 104, Exhibit 19.

37. I apologize if the Court thought that I was taxing the Court by submission of my evidence, but that was not even the half of it. I tried to limit as much I could. The Defendants' actions were over a course of about seven (7) years. I was not trying to offend and or tax the Court. I was simply trying to show the Court that the Defendants were liable for their discriminatory and retaliatory actions against me based on my race. color, and gender.

38. I am sorry that the Court did not have time to look through my evidence, but had the Court taken the time, the outcome would have been different. It was not my intention to frustrate the Court. I am a *pro se* litigant, who is in search of justice. So, I am submitting this affidavit in an honest effort and in good faith not tax the Court, but to point to proof in the record already before the Court that the Court overlooked, misunderstood and/or assumed.

39. The School District Professional Development Plan for the 2005-2006 and 2006-2007 school years confirms my position on tuition reimbursement, contact hours, and paid administrative internships; and contradicts Young's Affidavit. The School District was still reimbursing its white employees for coursework beyond the Masters' degree level. See, Dkt. # 104, Exhibit 19.

40. It is undisputed and I know from personal knowledge that the Defendants knew that the School District paid for its employees' tuition beyond the Masters' degree level, including for their administrative and doctoral degrees, including Kevin Hamilton, Richard Pound, Pam Tatro, Linda Romig, Barbara Goldammer, Jeremy McBride, Christine Defranco, and Beth Eggler, but not limited too. The Defendants also knew that the School District paid Robert Clark's college tuition and for his administrative internship at the University of Rochester. The School District

8

also paid for Jackie Davern, Antonio Vitale and Dennis Glaser's college tuition and paid administrative internships.

41. The few emails in this regard between Young and me do not tell the whole story. Neither do the emails between Carnevale-Bauer and Garvin and me tell the whole story. I provided Young with sufficient information in regard to the administrative internship. I was not telling him anything that he did not already know. He knew that the School District had promised me a paid administrative internship.

42. Dr. Reed promised me a paid administrative internship even after Walling wrote the letter in October 2005 to SUNY Brockport and after Dr. Reed's letter of January 10, 2006. I met with Dr. Reed and a host of other administrators on January 17, 2006.

43. Dr. Reed told me to submit a proposal. I submitted the proposal. The HFLEA also had a copy of the proposal that I submitted to Dr. Reed on or about January 22, 2006.

44. I also met with Young and Walling on January 26, 2006. Young heard Kathy Walling tell me in front of him that Dr. Diane Reed told them to grant me a paid administrative internship. Young knew for himself and heard Walling tell me that Dr. Reed granted the paid internship, so I did not have to convince him that the district granted me a paid internship. He knew first-hand that they had.

45. I provided Young documentation for tuition reimbursement and for all other matters as requested of me. The documentation does contradicts the information provided by Young because as both Young and I know, the School District granted and paid tuition reimbursement beyond the Masters' degree level.

46. I accepted the NYSUT's offer for representation of counsel. I did not retain private

9

counsel to represent me because I wanted to. It was not until I received a telephone call from my NYSUT Attorney, Gary Johnson, who informed me that his hands had been tied and that because his hands hand been tied, he felt that he could no longer effectively represent me; and he told me that I should retain private counsel.

47. Attorney Johnson did not tell me who had tied his hands, but he did tell me he was concerned about it and that it would be better if I retained private counsel. I did not want to retain private counsel, but what I suppose to do when my lawyer called me up and says, my hands have been tied, you need to seek private counsel. See, Dkt. # 104, ¶¶ 334, 335, 336, 337.

48. I also accepted NYSUT's offer of representation of Attorney Fusco. I did not want to seek private counsel then either. However, I received a letter from Sanders, NYSUT's General Counsel informing me that I should have known better; and that there was a conflict of interest.

49. Fusco, even though he appeared to pledge to represent me, immediately began to accuse me of not providing him with the documentation he request. He began to readily attack me with false accusations. He told me that this was not about me, but the School District's show.

50. Fusco and I met only one time and he began to immediately to tell me that I was guilty and that I needed to settle with the District. He immediately began to tell me that he did not represent my best interest, but that he represented the interest of the NYSUT.

51. It was not that I was not satisfied with Fusco and I really wanted him to represent me and had gladly accepted NYSUT's offer, but when he played the **"race card",** and falsely accused me of saying that, *"white administrators could not tell black people who they should consider their close relative"*; I knew then that he did not have my best interest and that he was only looking out for the interest of the School District and NYSUT.

52. In all due respect, for the hundredth time or more, I did not resign my position as a

10

tenured teacher per the settlement agreement and/or by any other means. The paragraph in reference to the resignation was left in there by mistake. That was a paragraph from December 2006, in which no settlement agreement was reached. I did not know that the letter was in the agreement because it was not in there when I signed it. And neither did I get a chance to read the Agreement prior to signing it because the School District claimed that the copier had broken down even though there are more than 5 to 10 copiers in the high school; and took about 45 minutes to supposedly fix.

53. Further, I was still employed with the School District in June 2007. Neither did I submit a letter of resignation. And neither did the School District pay me for any consideration in which I was not entitled to as a tenured teacher.

54. Most specifically, even though Dr. Michelle Kavanaugh, Superintendent of Schools swore by affidavit in case number 09-cv-6421 that I timely revoked the settlement agreement, Courts, including this one has continued to bind me to it. Dr. Kavanaugh's claims that there revocation was conditional are disputed. See, Dkt. # 104, Exhibit 28, ¶¶ 341, 342, 343, 344, 345.

55. Further, even though the School District has told this Court and other Courts that they terminated my employment, I am still being forced to have supposedly have resigned. I did not resign, the School District unlawfully terminated my employment.

56. I only gave the NYSUT a copy of the alleged settlement agreement because they asked me for a copy. I did not give them permission to use it for any other purpose, including submitting it in this matter; and should be stricken. Further and most specifically, the NYSUT obtained a copy of the settlement agreement from the School District through FOIL.

57. I know that the HFLEA has filed more than one grievance on the behalf of its white unit members, including Diggins and Blaine VanRy.

11

58. I know that the HFLEA/NYSUT represented white female teachers (tenured or non-tenured); including Susan Brunson, a white female tenured teacher and Cynthia Tinney, a white probationary teacher. See, Dkt. # 104, ¶¶ 177-179, Exhibit 27; Exhibit 28, ¶¶216, 217, 380, 381 .

59. On November 13, 2007, Susan Brunson was directed/ordered by the Board of Education to submit to a medical examination pursuant to Education Law §913. See, Dkt. # 104, Exhibit 27, ¶¶ 110, 365-367.

60. I know this was Brunson because she told me that it was her; and on March 7, 2011, Index No. 16-1568, the School District admitted that the employee was Brunson; that she was a white female tenured teacher; that the Board directed her to submit to a medical examination and that she did not submit to one; and that the district did not file Education Law §3020-a charges against her. See, Dkt. # 104, Exhibit 28, ¶¶ 365, 366, 367.

61. Brunson told me that she refused to submit to the November 13, 2007, directed or ordered medical examination by the Board of Education and that the HFLEA/NYSUT made certain that she did not have to submit.

62. The HFLEA/NYSUT told me that I had no choice and had to submit to the medical examination pursuant to Education Law § 913, but Brunson, a female white tenured teacher was not required to even though she was directed to by the Board of Education. The School District and HFLEA/NYSUT had one standard for its white employees and another for me as an African American/Black female tenured teacher or teacher.

63. The School District also admitted that on January 22, 2006, after I could not get any support from the HFLEA/NYSUT that I filed an EEOC complaint. See, Dkt. # 104, Exhibit 28, ¶132. The School District also admitted that my medical provider returned me to work on June

12

16, 2006; and that the district refused to allow me to return to work and barred me from school campus. See, Dkt. # 104, Exhibit 28, ¶193.

64.  The School District also admits that on June 21, 2006, I sent Walling, my immediate supervisor a letter regarding grievances and copied Young and Kavanaugh. See, Dkt. # 104, Exhibit 28, ¶ 196.  They also admits the same when Carnevale-Bauer was the HFLEA President.

65.  I provided the HFLEA/NYSUT with the documentation that was requested of me. Carnevale-Bauer  told Garvin on September 30, 2006 that I had provided her with the documentation that she requested and that she could take my responses, documentation to the grievance committee, but she did not provide any of my responses or documentation to the grievance committee and neither did Garvin even though he told Carnevale-Bauer, that after reading my responses he believed that that should all go to the grievance committee. See, Dkt. # 104, ¶¶ 306, 310.

66.  Carnevale-Bauer neither Garvin forwarded my claims/complaints to the grievance committee. See, Dkt. # 104, ¶¶ 304-312.

67.  To prove further disparate treatment, I obtained a sworn affidavit from one of my co-workers, Cynthia Tinney.  Tinney's sworn affidavit is evidenced in the record. See, Dkt. 104, ¶ 313, Exhibit 42. Tinney's sworn affidavit is dated April 23, 2014. See, Dkt. # 104, Exhibit 42.

68.  During the 2007-2008 school years; the HFLEA/NYSUT represented Tinney, a white probationary teacher; and the School District only suspended her for one month and then returned her back to payroll for the remainder of the 2007-2008 school years.

69.  The HFLEA/NYSUT allowed the School District to suspend me , cancel my health insurance; life insurance and disability benefits without a hearing and without my knowledge; remove me from payroll for 4 months during the 2005 -2006 school years and for 5 months

during the 2006-2007 school years; and to dock my pay over two months for the 2006-2007 school years; and then refused to do anything when my medical provider returned me to work and the School District refused to allow me to return to work and barred me from campus.

70. My paraprofessional, Michelle Irwin was bi-racial; and she received better treatment from the School District and the HFLEA/NYSUT than I did. Garvin represented her against me. I told the HFLEA/NYSUT that Irwin told me that she had to do what her bosses told her to do. See, Dkt. # 104, ¶¶ 241, 244, 245, 246, 247, 248, 249.

71. Because Irwin was bi-racial and not an African American/Black female, she received favorable treatment.

72. Even though the HFLEA/NYSUT claimed that I needed to fill out some form to file a grievance; they did not claimed that until June 2006/2007. And even though I requested procedures for filing a grievances from the HFLEA/NYSUT and a copy of the mystery form from Gillette, I never received one. See, my response to Gillette's Affidavit. See, Dkt. # 104, Exhibit 39. Cynthia Tinney and Susan Brunson told me that they were not required to fill out any form and that they did not know one existed.

73. On or about March 31, 2015, this Court by Decision and Order. See, Dkt. # 106; and granted Defendants' motion for summary judgment. The Judgment was entered the same day. See, Dkt. # 107.

74. The Court's determination was wrong and an abuse of discretion. The Defendants, HFLEA/NYSUT, et. al., were not entitled to summary judgment as a matter of law and triable issues of material facts remind in which a jury could find in favor of the plaintiff as to whether the Defendants' actions in which the defendants purposely and intentionally deviated from the parties collective bargaining agreement ("CBA"), Education Law §3020-a; and their established

14

practices, procedures and policies of HFLEA Executive Grievance Committee's sole authority to
process, evaluate and file grievances to arbitration on behalf of its unit member were based on
Plaintiff Malcolm's race, color or gender and pretext to discrimination?

75. The settlement agreement was not executed on July 16, 2007 and neither could it be
because of the seven day revocation period. Neither, did I resign my position. I did not get a
chance to read the agreement and was required to sign it within minutes. I did not know that the
School District had altered and changed the agreement during the 45 minutes that the district
claimed that the copier had broken down. The agreement that was signed was not the agreement
that was agreed to prior to the claimed break down of the copier by the district.

76. As explained in the accompanying Memorandum, the Court's decision was an abuse of
discretion, a clear error of fact, discovery was not complete, the Court's ruling on depositions are
still pending; the Court lacks jurisdictional consent, and there remain triable issues of material
facts in which a reasonable jury could return a verdict in favor of the plaintiff. For these
reasons, Plaintiff Malcolm respectfully requests that this motion be granted and (1) that the
Court's order and judgment of March 31, 2015 (Dkt. ## 106, 107) be vacated, and (2) that
Plaintiff Malcolm's demand for trial by jury be granted (Dkt. # 34); her Complaint reinstated; (4)
To Take Depositions and Discovery (Dkt. ##45, 46, 47, 91-2.

Plaintiff respectfully requests that this Court grants her motion to amend/correct her
Complaint, and to add the Honeoye Falls-Lima Central School District as a party to this action.

This motion is being brought in good faith and not to cause undue delay. The Defendants
would not be prejudiced should the Court grant Plaintiff Malcolm's motion.

DATED:   April 10, 2015

Respectfully Submitted By:
Bernice Malcolm

15

Bernice Malcolm, Pro *se* Plaintiff
6 Gingerwood Way
West Henrietta, New York 14586

Sworn to before me this 10th day of April 2015

Michelly
Notary Public

MICHELLE de PINALES
Notary Public. State of New York
Qualified in Monroe County
Reg. No. 01DE5088596
My Commission Expires Nov 24 2017

16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNICE MALCOLM,

Plaintiff,

**CERTIFICATE OF SERVICE**

Civ. No. 08-CV-6551 (JWF)
**Plaintiff demands a jury trial.**

v.

**HONEOYE FALLS-LIMA EDUCATION HFLEA("HFLEA"), ET AL.**

Defendants.

**CERTIFICATE OF SERVICE DATED APRIL 10, 2015**

I, Bernice Malcolm, *pro se*, hereby certify that I filed and hand delivered the original and a copy

of the following Notice of Motion, Plaintiff Affidavit with annexed Exhibits and Memorandum of Law

with the Clerk of the **UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW**

**YORK**, located at 100 State Street, Rochester, New York, 14614 on April 10, 2015; and that I served two

copies by U.S. Overnight Express Mail on April 10, 2015, upon Defendants' counselors; Anthony J.

Brock and Richard E. Casagrande, located at 800 Troy-Schenectady Road, Latham, New York 12110-

2455 on this day of April 10, 215.

**SENT BY: U.S. OVERNIGHT EXPRESS MAIL**

**New York State United Teachers Union**
Attorney for Defendants' HFLEA and NYSUT, ET AL.
Anthony J. Brock, Esq.,
Richard E. Casagrande, Esq.
800 Troy-Schenectady Road
Latham, New York 12110-2455

Bernice Malcolm, Pro *se* Plaintiff

17

Sworn to before me this 10th day of April 2015

Notary Public

MICHELLE de PINALES
Notary Public, State of New York
Qualified in Monroe County
Reg. No. 01DE5068596
My Commission Expires Nov. 24, 2017

18

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNICE MALCOLM,

Plaintiff,

**MEMORANDUM OF LAW**

Civ. No. 08-CV-6551 (JWF)
**Plaintiff demands a jury trial.**

v.

**HONEOYE FALLS-LIMA EDUCATION HFLEA("HFLEA"), NYSUT, ET AL.**

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF MALCOLM'S MOTION

On March 31, 2015, the Court granted Defendants, Honeoye Falls Education Association,

et al., motion for summary judgment, Dkt. #106. The Entry date of the judgment was also March

31, 2015.

Come now Plaintiff, Bernice Malcolm, who appears *pro se*, and respectfully seeks to

renew and/or reconsideration of the Court's determination. Plaintiff Malcolm seeks for

renew/reconsideration, a stay, alter/amend judgment and cross motion for discovery, to take

depositions, leave to amend complaint, and trial by jury, and any other relief deem just and

proper for which she is entitled to. Plaintiff Malcolm demands trial by jury. See, Dkt. # 34.

### INTRODUCTION

Plaintiff Malcolm respectfully requests that this Court reconsider and vacates its decision

of May 31, 2015, holding that (1) the plaintiff cannot establish her 42 U.S.C. §1981, Title VII

and NYHRL, discrimination claims against the HFLEA; (2) Defendants did not discriminate

1

against the plaintiff on the basis of race, color or gender; (3) Defendants provided plaintiff a fair duty of representation; and (4) Defendants reasons for not filing grievances on her behalf and/or the Association was not discriminatory and/or based on Plaintiff Malcolm's race, color or gender. The Court's findings are wrong and an abuse of discretion.

Plaintiff Malcolm respectfully submits that the Court's determination was wrong and an abuse of discretion in nature as to favor the Defendants even though Plaintiff Malcolm's Affidavit was based on her own personal and firsthand knowledge; she submitted a sworn affidavit from a co-worker, Cynthia Tinney in regard to the disparate treatment against the plaintiff. See, Dkt. # 104, Exhibit 42. Plaintiff Malcolm's substantial evidentiary and documentary submissions submitted proved that the Defendants were liable for their discriminatory actions against her and that the Defendants were not entitled to summary judgment as a matter of law; and that a reasonable jury could return a verdict in her favor.

The Court's finding that Plaintiff Malcolm *"alleges that she was the only tenured female African American teacher employed the school District"* should be corrected and the word "alleges" should be stricken. It is a fact that Plaintiff Malcolm was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA.

The Court's statement is in error and predicated upon a mistaken understanding of the facts regarding race of employees employed with the District. Plaintiff Malcolm has personal knowledge and knows for a fact that she was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA. See, Dkt. # 104, ¶¶ 2, 4, 5, 19, 43. Further and specifically, I know that the Honeoye Falls-Lima Central School District

2

confirmed to the New York State Division of Human Rights that Plaintiff Malcolm was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA.

To correct this mistake, Plaintiff Malcolm is supplying the Court with proof of personal and first-hand knowledge as indicate in her affidavits that she was the only tenured female African American/Black teacher employed with the Honeoye Falls-Lima Central School District and the only tenured female African American/Black teacher and unit member of the HFLEA. Discovery would prove these facts to be true.

The Court's finding that Plaintiff Malcolm cannot establish her 42 U.S.C. §1981, Title VII and NYHRL, discrimination claims against the HFLEA, et al was wrong and an abuse of discretion.

Further, the Court overlooked key issues of fact and substantial evidence in the record that was submitted by Plaintiff Malcolm by refusing to look through the evidence, but instead accused Plaintiff Malcolm of taxing the Court. The Court's abuse of discretion and stance on this is different than what the Court did for the Defendants. In all due respect, it appears that the Court looked and combed through the Defendants' "extensive documentation" as pointed out in the Court's ruling of March 31, 2015 (Dkt. # 106), but failed and refused to provide the same standard to the *pro se* plaintiff. Had the Court looked through Plaintiff Malcolm's evidence it would have made a different decision and the outcome would have been in her favor.

There remain triable issues of genuine material facts in which a jury could find in favor of Plaintiff Malcolm. The Court's statement that this dispositive motion is being heard by the

3

undersigned by consent of the parties pursuant to 28 U.S.C. Section 636(c). See Docket # 33 is in error, a mistake, and an abuse of discretion.

To correct this, the Court did not have consent by the *pro se* Plaintiff Malcolm and neither did *pro se* Plaintiff Malcolm consent to trial by a Magistrate Judge. Plaintiff Malcolm did not consent to the referral of this case to a magistrate judge, and that the Magistrate Judge therefore lacked authority to enter final judgment under 28 U.S.C. § 636(c)(1). Plaintiff Malcolm demanded trial by jury. See, Dkt. # 34.

Plaintiff Malcolm's former attorney Christina A. Agola, who has since been disbarred as of March 31, 2015, withdrew as counsel on or about June 23, 2010. See Dkt. # 35. This Court granted Mrs. Agola's motion to withdraw as counsel on or about June 25, 2010. See, Dkt. # 36). Christina A. Agola, did not provide Plaintiff Malcolm with the competent representation, skill and standard duty of care owed (Pl. Aff., ¶¶ 14-15, See, Dkt. # 104).

The Court was wrong to revert back to a consent signed by Plaintiff Malcolm's former and incompetent disbarred attorney and to ignore the wishes of the *pro se* plaintiff. Plaintiff Malcolm demanded trial by jury. See, Dkt. # 34. The matter should have been heard by a jury and not decided by Magistrate Judge Jonathan Feldman. Further, Plaintiff Motion for trial by jury is pending before this Court. See, Dkt. # 93. Plaintiff Malcolm did not consent to Magistrate and demanded trial by jury.

The Court did not have jurisdiction to render a final judgment of Plaintiff Malcolm's claims; and her claims should be reinstated.  Neither should Plaintiff Malcolm case have been dismissed because of deficiencies as pointed out by the Court, but the Court should have given her leave to correct the deficiencies pointed out by the Court prior to ruling on the defendants' motion for summary judgment. See, Dkt. # 106.

The abused its discretion and was wrong in ignoring the parties collective bargaining agreement and the HFLEA's Constitution. Plaintiff Malcolm disputes that Young, Carnevale-Bauer and Williams had the authority to decide whether her claims/complaints were grievances and/or had merit. The Court's determination that David Young, HFLEA President, Michelle Carnevale-Bauer, HFLEA President and William Garvin, NYSUT Labor Relations Specialist had the authority to decide whether Plaintiff Malcolm's claims/complaints were not grievances and/or lacked merit was a mistaken and misunderstanding. The HFLEA Executive Council was the exclusive grievance committee and had the sole authority to investigate and determine whether Plaintiff Malcolm's claims/complaints had merit (Malcolm's Reply Aff., ¶58, HFLEA Const., Section 5 (B) (5) (Pl. Aff., Exhibit 8). A reasonable jury could find if favor of Malcolm.

Young's Affidavit was submitted without signature and was not sworn to on February 27, 2013. See, Dkt. # 88-8, and should have been stricken for the record. The Defendants' claim that the Affidavit submitted for Young on March 11, 2014 was signed and sworn to by Young on February 27, 2013 is fraud, deceit and misrepresentation. See, Dkt. ## 88-8. 94; See, Dkt. # 103, Plaintiff Malcolm's response to Young's Affidavit.

More than a year later, and on or about March 11, 2014, the Defendants submitted an amended document, claiming it to be Young's Aff., that was supposedly signed and sworn to back in February 2013, more than a year later. See, Docket # 94. Plaintiff disputes the Defendants' claim disputed that Young signed his Affidavit on February 27, 2013 because as evidenced and proven in the record, Young did not sign his Affidavit on February 27, 2013. See, Dkt. # 88-8. This is clear error and Young's Affidavit should be stricken from the record and is not admissible. See, Dkt. # 103, Plaintiff Malcolm's response to Young's Affidavit.

5

Plaintiff Malcolm disputes that the Defendants acted in good faith, but rather engaged in a cover-up and discriminated and retaliated against her based on her race, color and gender; and refuse to file any grievances on her behalf; failed to provide her with a fair duty of representation.

Should this Court refuse to strike Young's Affidavit, then Young admits in his Affidavit that the HFLEA Executive Council was the sole authority in the process of evaluating and filing of grievances. This Court's finding and references of what Young, Carnevale-Bauer, and Garvin claimed to have done is based upon a genuine dispute between the parties and should be decided by a jury. The Court mistakenly gives authority to Young, Carnevale-Bauer and Garvin that is not given by the parties CBA and/or the HFLEA Constitution. See, Dkt. # 104; 104, Exhibit 8.

Plaintiff Malcolm filed numerous of claims/grievances from 2006 through 2008 with the HFLEA against the School District. And Carnevale-Bauer's claims that she did not is a lie. Further, if Plaintiff Malcolm did not file any claim/grievances, what was the HFLEA/NYSUT claiming to be determining, interpreting and/or investigating from 2006 through 2008? Further and specifically, this was not Young, Carnevale-Bauer and/or Garvin's call and/or within their duties or authority. The Court's finding is erroneous and must be corrected. See, Dkt. # 104, Exhibit 8.

The Court's determination that the following defendants were named in the Complaint but were later dismissed from the instant action by Decision and Order dated January 11, 2010 (Docket # 27: New York State United Teachers, David Young, Michelle Carnevale-Bauer, The New York United Teachers, and William Garvin is an abuse of discretion and made in error. During that time Christina A. Agola was plaintiff's attorney and did not point out and/or even provide to the Court that the Defendants were properly served by the United States Marshall on

6

or about February 18, 2009, and that as an authorized agent, Anthony Brock, Esq., certified and sworn that he was an agent authorized to accept service on behalf of the NYSUT, David Young, Michelle Carnevale-Bauer, The New York United Teachers, and William Garvin. See, Dkt. # 4.

This Court should have corrected the error and mistake. Plaintiff Malcolm provided proof to this Court that the Defendants, NYSUT was properly served, See, Dkt. # 4; Pl., Aff., See, Dkt. # 104, ¶ 16, Exhibit 1). Mrs. Agola did not point that out to Judge Larimer that the NYSUT had been properly served and that Dkt. # 4 established clear proof of that. And most specifically, Judge Larimer had to revert back to Plaintiff's Malcolm's deficient complaint to make a ruling because he found Attorney's Agola's proposed amended complaint to be so poor and inadequate. See, Dkt. # 27. A reasonable jury could find that the Defendants' NYSUT was properly served and find in favor of Plaintiff Malcolm.

The Court's findings and mistaken statements that Plaintiff Malcolm was absent without leave, resigned her position per settlement agreement, took consideration, documents were in contradiction, e.g., letter from Attorney Fusco; that she dismissed Attorney Johnson and Fusco on her own because she was not satisfied with their representation; the defendants did not alter the CBA, and among other things should be stricken from the record. These statements are not true and are harmful and prejudice to Plaintiff Malcolm. There remain triable issues of fact as to whether Defendants tied Fusco and Johnson's hands and instructed them to misrepresent Plaintiff Malcolm.

Plaintiff disputes the statements and neither were these matters before the Court. If the Court wants to hold to its ruling on these matters then it would be only fair and to avoid a manifest injustice to allow Plaintiff Malcolm to amend her Complaint to add the Honeoye Fall-

7

Lima Central School District as a party and for discovery against the Honeoye Falls-Lima
Central School District.

The Court's comments about Fusco's letter is only half true, however, the Court looks
over the fact that Fusco falsely accused Plaintiff Malcolm of making derogatory statements about
white people, e.g., white administrators. A reasonable jury could find that Plaintiff Malcolm was
justified in her fears and the Court's assumption that the NYSUT apparently felt that it needed to
hire Fusco instead of providing Plaintiff Malcolm with adequate representation from with the
NYSUT was unfounded and not supported.

The Court's finding that Plaintiff Malcolm was given the opportunity to engage in
discovery was partially correct, however, Plaintiff Malcolm informed the Court that the
Defendants' failed to comply with the discovery demands and motion to compel discovery. See,
Dkt. # 91. Plaintiff Malcolm also made motion for depositions and request for documents from
the New York State United Teachers, Honeoye Falls-Lima Education Association and the
Honeoye Falls-Lima Central School District. See, Dkt. # 84. This Court reserved ruling on the
motion until after ruling on defendants' motion for summary judgment. This motion is pending
before the Court.

The Court's finding that Plaintiff Malcolm's Affidavits are not based on personal
knowledge is not correct and an abuse of discretion. To correct this error and mistake, Plaintiff
Malcolm points the Court to proof as submitted in her responses to the Defendants' motion for
summary judgment. In all due respect, the Court's determination is wrong and an abuse of
discretion, as the Court admits that it did not take Plaintiff Malcolm's submission of substantial
evidence seriously because the Court felt that as a *pro se* she was taxing the Court; and therefore

8

did not provide her with a full and fair opportunity to litigate her claims and/or correct any deficiencies.

The Court's finding that Plaintiff Malcolm did not provide the HFLEA with a copy of the counseling memorandums is in error and should be corrected. The Court is in error and is under the mistaken assumption that Plaintiff Malcolm did not provide the Defendants with the counseling memorandums. Further, Plaintiff Malcolm did not state that she did not provide the HFLEA with the counseling memorandums.

Most specifically, Plaintiff Malcolm gave the Defendants as admitted to by Young access to her personnel file. See, Dkt. #106. Plaintiff Malcolm's personnel file included copies of the three counseling memorandum; as well as substantial other documents of proof that warranted filing a grievance on her behalf and/or the HFLEA. The HFLEA/NYSUT deviated from its own long-standing established policies and procedure as well as from the CBA and HFLEA Constitution. See, Dkt. # 104. Carnevale-Bauer and Gavin was in possession of all three counseling memorandums. Carnevale-Bauer was in possession on the days that Plaintiff Malcolm received them; and she had access to Plaintiff Malcolm's personnel file.

The Court is in error, it was not in the authority of Young, Carnevale-Bauer and/or Garvin to process, interpret, investigate, evaluate and/or decide whether Plaintiff Malcolm's claims were grievances or not and/or whether they had merit. That exclusive power was in the sole authority of the HFLEA Executive Grievance Counsel. See, Dkt. # 104, Exhibit 8.

The HFLEA Executive Council was the Grievance Committee. The Grievance Committee knew and had full knowledge of what was going on, but failed to; and did not process, investigate, evaluate and/or decide on any of the other claims/grievances filed by Plaintiff Malcolm; and their decision not to process and filed the grievance in regard to caseload

9

and IST to arbitration was not done in good faith, but based on Plaintiff Malcolm's race, color and gender. The teachers, who were interviewed for their input regarding caseload were all white male and female teachers and none of them taught IST. Plaintiff Malcolm is African American/Black female.

Plaintiff Malcolm contends that the Defendants filed grievances to arbitration for white teachers; and that the Defendants' decision not filed her grievance in regard to the counseling memorandums to arbitration was based on her race, color and gender.

The Court's ruling in regard to the findings made in regard to Michael Diggins and Blaine VanRy were in error and based on an assumption and misunderstanding. The record, should the Court had not become frustrated and decided not to look through the plaintiff's submission, etc., showed and clearly established that the Defendants treated Plaintiff Malcolm differently in providing her with a fair duty of representation than it did its white members, including Diggins, VanRy, Susan Brunson and Cynthia Tinney. See, Dkt. # 104, Exhibit 42.

## STANDANRD OF REVIEW

This Court erred and abused its discretion. Defendants were not entitled to dismissal or summary judgment as a matter of law; and the judgment should be vacate. Pursuant to Federal Rule of Civil Procedure 60(b) and Local Civil Rule 6.3, Plaintiff Bernice Malcolm respectfully seeks reconsideration of the Court's determination. *Bass v. U.S. Dept. of Agriculture*, 211 F.3d 959, 962 (5th Cir. 2000), Since the Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration, such a motion may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b). *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). In *DiLaura v. Power Authority of State of N.Y.*, 982 F.2d 73 (2d Cir. 1992), the Second Circuit explained: As we have noted, "[t]he major grounds justifying reconsideration are 'an

10

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways*, 956 F.2d at 1255 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478, at 790 (1981)).... *DiLaura*, 982 F.2d at 76. Subsequently, in *Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995.

"Any minor [in]convenience suffered by Defendants in having to respond to Plaintiffs' Amended Complaint 'hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits.'" DiBello, 2010 WL 741970 at *2 (quoting S.S. Silberblatt, Inc. V. East Harlem Pilot Block-Bldg. 1 Hous., 608 F.2d 28 (2d Cir. 1979)). There is no definitive time limit for which a motion to amend a complaint must be submitted. SeeSmith v. Industrial Leasing Corp., 124 AD2d 413 (3d Dept 1986) (leave of court can be granted at any time). There is no basis for the defendants to assert they are unduly prejudiced by the proposed amendments.

## ARGUMENT

### POINT I

### PLAINTIFF MALCOLM DID NOT CONSENT TO MAGISTRATE

*Pro se* Plaintiff Malcolm consent to a Magistrate Judge to make a final judgment, but demanded trial by jury. The Second Circuit has held that the statute and the rules that accompany it "establish procedures designed to ensure that a party's consent to be bound by the decisions of a magistrate judge is truly voluntary." *N.Y. Chinese TV Programs, Inc. v. U.E. Enters.*, 996 F.2d 21, 24 (2d Cir. 1993). "Consent of all parties must be clear and express or the requirement would mean little." *Id.*

11

## POINT II

## DEFENDANT WAS NOT ENTITLED TO SUMMARY JUDGEMENT AS A MATTER OF LAW

A "motion for summary judgment" asks the court to decide that the available evidence, even if taken in the light most favorable to the non-moving party, supports a ruling in favor of the moving party. The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case (*see*, Zuckerman v City of New York, 49 NY2d 557, 562; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers (Matter of Redemption Church of Christ v Williams, 84 AD2d 648, 649; Greenberg v Manlon Realty, 43 AD2d 968, 969). The Defendants have not made a showing that they were entitled to summary judgment as a matter of law; and the Court's decision should be reversed.

## POINT III

## THERE REMAIN TRIBALE ISSUES OF MATERIAL FACT

There remain triable issues of material facts in which a reasonable jury could return a verdict in favor of Plaintiff Malcolm as to whether the Defendants' actions were pretext to discrimination and motived by discriminatory animus, where the Defendants' Young, Carnevale-Bauer and Garvin, Gillette; and the HFLEA/NYSUT deviated from their normal course of practices, policies and procedures caused Plaintiff Malcolm irreparable harm and ultimately termination of employment?  A genuine exits "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## POINT IV

12

## PLAINTIFF MALCOLM HAS ESTABLISHED A PRIMA FACIE CASE PURSUANT TO 42 U.S.C. SECTION 1981, TITLE VII AND NYHRL

Plaintiff Malcolm has established and prima facie case and that she is entitled to relief. 42 U.S.C. § 1981, proscribes racial discrimination concerning a person's right to "make and enforce contracts," which encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Turner v. Nazareth College, 2011 U.S. Dist. LEXIS 8324, at *9 (W.D.N.Y. Jan. 28, 2011) (quoting Milan v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (internal quotation marks omitted)). Plaintiff Malcolm has sufficiently meet her burden.

Plaintiff Malcolm establishes that based on her race, color, and gender that the Defendants purposely and intentionally deviated from the CBA and HFLEA Constitution.

Plaintiff Malcolm also establishes that the Defendants treated white employees more favorable than her, or her class, African American/Black. Susan Brunson was a white tenured teacher that was out of work from November 13, 2007 through March 2008 to June 9, 2008 and countless of time during the 2004-2006 school years along with other white employees. The defendant did not force Susan Brunson to return to work and did not commence 3020-a disciplinary charges against her. See, Dkt. # 104. Cynthia Tinney, also a white female teacher, who was employed with the also received more favorable treatment. See, Dkt. # 104, Exhibit 42.

13

To state a claim of discrimination under Title VI, the plaintiff must plausibly allege, inter alia, that the defendant engaged in discrimination based on race, the discrimination was intentional, and the defendant's discriminatory intent was a substantial or motivating factor for its actions. Roggenbach v. Touro College of Osteopathic Med., 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014) (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001)).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal). Plaintiff's Complaint and other evidentiary submissions far exceed and meet this standard.

## POINT V

## THE COURT'S DETERMINATION WAS WRONG AND THE COURT ABUSED IT DISCRETION

The Court was wrong and abused its discretion and ignore parties' collective bargaining agreement ("CBA") and the HFLEA Constitution, where the HFLEA Executive Council was the grievance committee, who had exclusive authority to determine, interpret, evaluate and /or investigate whether Plaintiff Malcolm's claims/complaints were valid grievances and had merit. That authority did not lie with Young, Carnevale-Bauer; and neither Garvin.

It was not within Young, Carnevale-Bauer and Garvin's authority to determine and/or interpret whether Plaintiff Malcolm's claims/complaints were valid grievances and had merit.

Young, Carnevale-Bauer and Garvin all knew that they were violating the parties' CBA and the HFLEA Constitution. See, Dkt. # 104, Exhibit 8, See, Dkt. # 104, ¶¶ 305-310.

A reasonable jury could find that the Defendants' deliberate and intentionally deviation from the parties' CBA and HFLEA Constitution was in discrimination and based on Plaintiff

14

Malcolm's race, color and gender; and as to whether that was a motivating factor. See, Dkt. # 104, ¶¶ 305-310.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Court's Decision and Order dated March 31, 2015 and reinstate the Complaint, grant Plaintiff Malcolm's motion for discovery, to take depositions, amend the complaint, and trial by jury, or in the alternative a stay of the judgment until resolution of Plaintiff's appeal to the United States Court of Appeals for the Second Circuit.; and for whatever other relief the court deems appropriate.

Dated: April 10, 2015

Respectfully Submitted by:

_Bernice Malcolm_

Bernice Malcolm, Pro *se* Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BERNICE MALCOLM,

Plaintiff,

**CERTIFICATE OF SERVICE**

Civ. No. 08-CV-6551 (JWF)
**Plaintiff demands a jury trial.**

v.

**HONEOYE FALLS-LIMA EDUCATION HFLEA("HFLEA"), NYSUT, ET AL.**

Defendants.

---

**CERTIFICATE OF SERVICE DATED APRIL 10, 2015**

I, Bernice Malcolm, *pro se*, hereby certify that I filed and hand delivered the original and a copy

of the following Notice of Motion, Plaintiff Affidavit with annexed Exhibits and Memorandum of Law

with the Clerk of the **UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW**

**YORK**, located at 100 State Street, Rochester, New York, 14614 on April 10, 2015; and that I served two

copies by U.S. Overnight Express Mail upon Defendants' counselors. Anthony J. Brock and Richard E.

Casagrande, located at 800 Troy-Schenectady Road, Latham, New York 12110-2455 on this day of April

10, 215.

**SENT BY: U.S. OVERNIGHT EXPRESS MAIL**

**New York State United Teachers Union**
Attorney for Defendants' HFLEA and NYSUT, ET AL.
Anthony J. Brock, Esq.,
Richard E. Casagrande, Esq.
800 Troy-Schenectady Road
Latham, New York 12110-2455

Bernice Malcolm, Pro *se* Plaintiff

16